## Dillia Bell, Administratrix v. Louisville & Nashville Railroad Company and I. H. Mooy.

(Decided October 12, 1926.)

### Appeal from Whitley Circuit Court.

1.  Master and Servant.—Railroad held entitled to peremptory instruction in action for death of employee injured by fall of gate while greasing journals of dump car, in view of notice of danger and assumption of risk.
2.  Evidence.—A principal or master is not bound by admissions of agent or servant unless part of res gestae.
3.  Master and Servant.—Doctrine requiring master to furnish servant reasonably safe place is applied with regard to character of work and in harmony with doctrine of assumed risk.
4.  Master and Servant.—Servant assumes ordinary risks not created by master's negligence, but not extraordinary risks arising from master's negligence.

STEPHENS & STEELY for appellant.

TYE & SILER, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellant, William Bell's administratrix, instituted this action and sought to recover from appellee, Louisville & Nashville Railroad Company and I. H. Mooy, for the death of her intestate, upon the theory that it was

caused by their negligence. At the conclusion of all the evidence the trial court peremptorily instructed the jury to find for appellees. Hence the appeal.

Appellant insists that the court erred in awarding appellees the peremptory instruction. The undisputed facts are these: Three railroad dump cars and a spreader car had been placed for repairs on one of the tracks of the shop yards of the railroad company in Corbin, Kentucky. Before being so placed the cars had been inspected and tagged so as to give notice to the repairmen of the repairs needed. Car repairing seems to be divided among three crews of workmen, one of which works upon defective air brake equipment, another upon broken or damaged parts of the bodies of the cars, while yet another, referred to as the "dope crew," is required to repack the journal boxes, which furnish lubrication to the revolving axles, when necessary. The undisputed evidence herein discloses that on the Sunday morning in question the repair crew, consisting of appellee, Mooy, and a helper, whose duty it was to remove and replace broken and damaged parts of the bodies of the damaged cars, went to work about seven o'clock on the second of three dump cars on repair track No. 8 in the shop yards. That car was so constructed that the body turned on an axis by power and could be tilted to either side, during which process the sides of the car by mechanism would swing out from the bottom and its cargo of earth would be dumped to the side. The sides or gates of this car were constructed of heavy metal frames incased on either side with a thin sheet of metal, and from the evidence weighed more than a thousand pounds each. They were hinged at the top and these hinges or fastenings were damaged, bent and broken, necessitating their removal for repairs to such as could be repaired and replacement of the broken parts that could not be repaired. Shortly after that crew reached the car on which it intended to work, the undisputed evidence discloses that appellant's intestate, the only member of the "dope crew" at work that morning and his own boss in his own line of work, approached the car on which Mooy and his helper were then working or were about to go to work, and was warned by appellee, Mooy, not to proceed with his work as it was dangerous because of the defective condition of the gates. Mooy and his helper both testified that appellant's intestate thereupon left the car and they

proceeded with the work.   Just at what time the warning was given is indefinite, although the repair crew appear to have reached the car on which they began their work about seven o'clock a. m.   After working for awhile at removing the hinges or fastenings of the gate on the east side of the car the helper was sent to the shops for additional tools, returned with them and handed them up to Mooy, who was in the bed of the car at work; the helper then walked north, passed the car they were working on and the one next ahead and crossed the track to warm himself at a fire between tracks Nos. 8 and 9.   As he turned his back to the fire after reaching it, he observed appellant's intestate at work doping one of the journals at the north end of the car on which his foreman was at work; and just at that instant the gate of the car on the west side and immediately over appellant's intestate fell from its hangings, catching intestate as he undertook to escape it and crushing him to the earth, causing the injuries from which he shortly died.   Appellee, Mooy, shown by the undisputed evidence to have been unaware of intestate's presence, was at the time hammering on one of the fastenings of the gate on the opposite side and at the other end of the car in an attempt to remove it. Another workman engaged in similar work on the body of the car next south of where intestate was killed had removed the damaged hinges or fastenings from the gate on the west side of the car on which he was working and was in the act of collecting the damaged irons which he had removed to take them to the shop for repairs when he heard the gate fall from the car ahead.   He immediately turned and ran to the assistance of the stricken man.   The foreman of the air brake crew had passed while appellant's intestate was at work doping one of the journals at the north end of the west side of the car where he shortly was killed.   The repair crew was then at work on the gate on the opposite side and at the opposite end of that car.   After a short conversation with intestate the foreman of the air brake crew proceeded north between tracks 8 and 9 and was some ten or twelve car lengths away when the gate fell which killed appellant's intestate.   Appellant argues:

"When this car was placed on this track after it had been inspected, if this door was in an unsafe condition and was likely to fall, then the inspector

should have given notice of this fact so that those whose duty it was to work around and on this car would have opportunity to have protected themselves."

The answer to that argument is that appellee, the railroad company, appears to have given just such notice when it placed on the car in question at the place on it provided for the purpose a tag disclosing the defective condition of the car and directing what repairs should be made. In addition to that general warning the undisputed testimony discloses that when appellant's intestate first approached the car to repack any journals that might need that attention he was expressly warned by the car repair crew not to do so because the car was in a dangerous condition, and the defects were such as to necessitate taking the car apart. Some question is sought to be raised from the testimony of two or three witnesses introduced in rebuttal by appellant as tending to contradict the testimony of Mooy and his helper by what they said some three or four hours after intestate's death, that they merely warned him not to work on the east side of the car. However, what they stated in their testimony Mooy and his helper said to them on that occasion must be given a strained construction when considered carefully to be held to contradict their testimony herein. No principle of law is better settled in this jurisdiction than that a principal or master is not bound and can not be affected by admissions of his agent or servant unless part of the *res gestae*. Prestonsburg Superior Oil Gas Company v. Vance, 215 Ky. 77, and cases therein cited. If appellant's contention could be sustained that what Mooy and his helper said some four hours after the accident was a contradiction of their testimony that they expressly warned intestate not to dope the journals of the car on which they were working because it was dangerous, in that they stated that they merely warned him not to work on the west side of the car, it did not constitute substantive evidence against appellee, the railroad company, and could be considered only for the purpose of affecting the credibility of the witnesses, if it did so.

The undisputed evidence of this case discloses that appellant's intestate was warned of the fact that he was working in a dangerous place, first, by reason of the fact

that the car on which he was working was placed on a track used exclusively for repair work on defective cars; second, the car had been tagged by inspectors which disclosed its defects and directed the various repair crews what they should do toward its repair; third, he was given actual notice of the dangerous condition of the gates of the car by the workmen then engaged in its repair and left; fourth, when he later returned and began his work on the journals at the north end on the west side of the car he was given actual notice that the gates of the dump cars were defective and were being repaired because the workmen then were actually engaged in removing one of the gates of that particular car, using a hammer on the metal parts to remove them; and, fifth, a workman on the same side of the cars on which intestate was killed was engaged in the same service on the car next south of him. Under these undisputed facts, this court is unable to perceive how it can be said that intestate's death was the result of negligence upon the part of either of the appellees.

The general doctrine which requires the master to furnish his servant a reasonably safe place in which to work is always applied with regard to the character of work undertaken by the servant and is uniformly worked out in harmony with the doctrine of assumed risk. It has uniformly been recognized in this jurisdiction that the servant assumes the ordinary risks of his service, which uniformly have been held to be such risks as are not created by the master's negligence; but that he does not assume the extraordinary risks of his employment, which have uniformly been held to be such risks as are created by his master's negligence. C. & O. Ry. Company v. Hebel, 167 Ky. 165.

Here, the record discloses an utter failure of proof tending to establish negligence upon the part of either of appellees, and that appellant's intestate warned, as above indicated, of the danger incident to the labor he was performing, proceeded with the work, in the prosecution of which he was injured and killed. Under the facts of this case it can not but be held that in doing so he assumed the risk. We conclude, therefore, that the trial court at the close of the evidence properly sustained appellee's motion for a directed verdict.

Judgment affirmed.